UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRUSTEES FOR THE MASON TENDERS
DISTRICT COUNCIL WELFARE FUND,
PENSION FUND, ANNUITY FUND, and
TRAINING PROGRAM FUND, and ANNA
GUTSIN, *in her fiduciary capacity as Director*,

and

ROBERT BONANZA, *in his fiduciary capacity as Business Manager of the Mason Tenders District Council of Greater New York*,

Petitioners,

-v.-

S&S KINGS CORP.,

Respondent.

20 Civ. 6443 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Trustees for the Mason Tenders District Council Welfare Fund, Pension Fund, Annuity Fund, and Training Program Fund (collectively, the "Funds"), and Robert Bonanza in his fiduciary capacity as Business Manager of the Mason Tenders District Council of Greater New York (the "Union," and together with the Funds and Funds Director Anna Gutsin, "Petitioners"), have filed this motion for summary judgment on their petition to confirm an arbitration award in favor of Petitioners dated August 16, 2019 (the "Award"), issued by arbitrator Joseph Harris (the "Arbitrator"). Respondent S&S Kings Corp. ("S&S Kings") has opposed neither the petition nor the summary judgment motion. For the reasons set forth in the remainder of this Opinion, Petitioners' motion is granted in full.

## BACKGROUND[1]

**A.    Factual Background**

This case arises from Respondent's alleged breach of a collective bargaining agreement with Petitioners for two work periods: (i) April 1, 2015, through June 30, 2015; and (ii) July 1, 2018, through September 30, 2018. (Pet. 56.1 ¶ 6).

The Funds are employee benefit plans established and maintained pursuant to certain trust agreements (the "Trust Agreements") and jointly administered by a board of trustees made up of union and employer representatives. (Pet. 56.1 ¶ 1). One purpose of the Funds is to provide fringe benefits to eligible employees on whose behalf employers contribute to the Funds pursuant to collective bargaining agreements between employers in the building and construction industry and the Union. (*Id.*).

The Union is a labor organization that represents employers in an industry affecting commerce as defined in Section 501 of the Taft-Hartley Act, 29 U.S.C. § 142, and Section 3(4) of ERISA, 29 U.S.C. § 1002(4). (Pet. 56.1 ¶ 3). Robert Bonanza is the Business Manager of the Union; he brings this action for dues and contributions in his representative capacity pursuant to

---

[1]    The facts in this Opinion are drawn from the petition ("Petition" or "Pet." (Dkt. #1)); Petitioners' Rule 56.1 Statement ("Pet. 56.1" (Dkt. #13)); the declaration of Haluk Savci ("Savci Decl." (Dkt. #14)); and the exhibits attached thereto: the Opinion and Default Award that Petitioners seek to confirm (the "Award" (Dkt. #14, Ex. 1)); the Project Labor Agreement Covering Specified Renovation and Rehabilitation of City Owned Buildings and Structures for fiscal years 2015-2018 (the "PLA" (Dkt. #14, Ex. 2)); and the Funds' Trust Agreements (the "Trust Agreements" (Dkt. #14, Ex. 3)).

Section 12 of the General Associations Law of the State of New York. (*Id.* at ¶ 4).

Respondent S&S Kings is a construction contractor located in Briarwood, New York. (Pet. 56.1 ¶ 5). Respondent is bound to the terms and conditions of the Project Labor Agreement with the Building and Construction Trades Council of Greater New York, of which the Union is a member. (*Id.*). More specifically, Sohail Ahmed, Respondent's President, executed a letter of assent binding Respondent to the terms of the PLA with respect to the Union work at issue here. (*Id.*).

The PLA "require[s] signatory employers … to pay timely benefit contributions on behalf of all [covered] workers" to certain benefit funds. (Pet. 56.1 ¶¶ 7, 9; *see generally* PLA, art. 11, § 2(A)). To this end, the PLA also requires such contractors to make benefit contributions pursuant to the terms of the benefit funds' Trust Agreements. (PLA, art. 11, § 2(C)). If a contractor-employer "fails to make required contributions to the Trust Fund," the Funds may initiate arbitration proceedings. (Trust Agreements, § 9.8). In any legal action seeking unpaid contributions, the contractor-employer shall pay to the Funds all unpaid contributions due and payable, interest on such unpaid contributions, interest on the unpaid contributions as and for liquidated damages, and all attorneys' fees and costs of the action. (*Id.* at § 9.9).

This action arose after Petitioners discovered that Respondent had failed to pay benefit contributions on behalf of its covered employees for the work periods (i) April 1, 2015, through June 30, 2015, and (ii) July 1, 2018, through

September 30, 2018. (Pet. 56.1 ¶ 6). On May 31, 2019, the Funds served a notice and demand for arbitration on Respondent, pursuant to the PLA and the Trust Agreements. (*Id.* at ¶ 16; *see also* Savci Decl., Ex. 6). On June 3, 2019, the Arbitrator scheduled a hearing for June 24, 2019, and notified the parties by mail and electronic mail. (Pet. 56.1 ¶ 16). The Arbitrator convened the hearing on June 24, 2019. (*Id.* at ¶ 17). No representative for Respondent appeared. (*Id.*). After finding that Respondent had received sufficient notice of the hearing, the Arbitrator proceeded with the hearing. (*Id.*).

The Funds submitted evidence in support of their claim that Respondent had failed to pay required benefit contributions and other monies for its workers. (Pet. 56.1 ¶ 18). The evidence included shop steward reports and the Funds' deficiency reports, which indicated that Respondent had failed to pay the following amounts:

- For the period April 1, 2015, through June 1, 2015, $6,974.52 in contributions, $1,134.36 in dues and political action committee contributions, and $1,789.12 in interest; and

- For the period July 1, 2018, through September 30, 2018, $16,636.72 in contributions, $2,533.28 in dues and political action committee contributions, and $1,017.53 in interest.

(*Id.*). The Funds also submitted testimony through their delinquency manager that Respondent had failed to open its books and records for examination, in

4

violation of section 9.7 of the Trust Agreements (*see* Trust Agreements, § 9.7(a) ("[The Funds] may examine and audit payroll, employment, and any other pertinent records of any Employer....")), and despite numerous requests that it do so (Pet. 56.1 ¶ 18).

On August 16, 2019, the Arbitrator issued the Award, finding that Respondent had failed to make the requisite payments to Petitioners. (*See* Award 2; *see also* Pet. 56.1 ¶ 19). The Arbitrator ordered Respondent to pay the Funds a total of $37,248.83, comprising the amounts detailed above as well as liquidated damages of $3,578.24 for the 2015 period and $2,035.06 for the 2018 period; attorneys' fees of $500.00; and arbitrator fees of $1,050.00. (Award 2-3). Further, the Arbitrator ordered Respondent to cooperate with the Funds and promptly open its books for a payroll audit covering the period of December 2, 2014, through the date of the arbitration hearing. (*Id.* at 2; Pet. 56.1 ¶ 19).

Since the Award was issued, Respondent has made some payments against the 2015 shop steward period, leaving an outstanding balance of $23,570.00. (Pet. 56.1 ¶ 20). Respondent has refused, however, to allow a books and records examination. (*Id.*).

**B.     Procedural Background**

Petitioners filed the instant petition to confirm the Award on August 13, 2020. (Dkt. #1). The Court ordered Petitioners to move for confirmation of the Award in the form of a motion for summary judgment, in accordance with Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1 of the Southern

District of New York, on or before January 19, 2021. (Dkt. #11). The Court further ordered Respondent to file any opposition brief by February 18, 2021, and Petitioners to file their reply by March 4, 2021. (*Id.*). Petitioners filed their summary judgment motion on January 19, 2021. (Dkt. #12-15). Respondent has neither filed opposition papers nor appeared in the case. Therefore, the unopposed motion is ripe for the Court's consideration.

## DISCUSSION

### A. Applicable Law

#### 1. Standard of Review for Labor Arbitration Awards

Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, rather than the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, provides that federal district courts have jurisdiction over violations of labor contracts. *See Nat'l Football League Mgmt. Council* v. *Nat'l Football League Players Ass'n*, 820 F.3d 527, 536, 545 n.13 (2d Cir. 2016). Actions to confirm and vacate arbitration awards fall within the scope of Section 301. *See, e.g.*, *Local 802, Associated Musicians of Greater New York* v. *Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998); *Kallen* v. *Dist. 1199, Nat'l Union of Hosp. & Health Care Emps.*, 574 F.2d 723, 725 (2d Cir. 1978). At the same time, federal courts enforcing labor arbitration awards look to the FAA "to guide the development of rules of federal common law to govern [ ] disputes [regarding labor contracts] pursuant to the authority to develop such rules granted under 29 U.S.C. § 185." *Supreme Oil Co.* v. *Abondolo,* 568 F. Supp. 2d 401, 405 n.2

6

(S.D.N.Y. 2008); *see also United Paperworkers Int'l Union* v. *Misco, Inc.*, 484 U.S. 29, 40 n.9 (1987).

The Second Circuit has "repeatedly recognized the strong deference appropriately due arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process." *Porzig* v. *Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007). "Further, 'the federal policy in favor of enforcing arbitration awards is particularly strong with respect to arbitration of labor disputes.'" *Supreme Oil Co.*, 568 F. Supp. 2d at 406 (quoting *N.Y. Hotel & Motel Trades Council AFL-CIO* v. *Hotel St. George*, 988 F. Supp. 770, 774 (S.D.N.Y. 1997)). "Judicial review of a labor-arbitration decision pursuant to [a collective bargaining] agreement is very limited." *Major League Baseball Players Ass'n* v. *Garvey*, 532 U.S. 504, 509 (2001). "[I]f an 'arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" *Id.* (quoting *E. Associated Coal Corp.* v. *United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000)); *see also Wackenhut Corp.* v. *Amalgamated Local 515*, 126 F.3d 29, 31-32 (2d Cir. 1997) ("[A]n arbitration award must be upheld when the arbitrator 'offer[s] even a barely colorable justification for the outcome reached.'") (second alteration in original) (quoting *Matter of Andros Compania Maritima, S.A. (Marc Rich & Co., A.G.)*, 579 F.2d 691, 704 (2d Cir. 1978)); *see generally D.H. Blair & Co.* v. *Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006).

However, "great deference ... is not the equivalent of a grant of limitless power." *Leed Architectural Prods., Inc.* v. *United Steelworkers of Am., Local 6674*, 916 F.2d 63, 65 (2d Cir. 1990). "An arbitrator's authority to settle disputes under a collective bargaining agreement is contractual in nature, and is limited to the powers that the agreement confers." *Id.*; *see also Local 1199, Drug, Hosp. & Health Care Emps. Union, RWDSU, AFL-CIO* v. *Brooks Drug Co.*, 956 F.2d 22, 25 (2d Cir. 1992) ("The scope of authority of arbitrators generally depends on the intention of the parties to an arbitration, and is determined by the agreement or submission." (internal quotation marks and alterations omitted)). "This rule applies not only to the arbitrator's substantive findings, but also to his choice of remedies. He may not impose a remedy which directly contradicts the express language of the collective bargaining agreement." *Leed Architectural Prods.*, 916 F.2d at 65 (internal quotation marks omitted). An arbitrator's "award is legitimate only so long as it draws it essence from the collective bargaining agreement." *United Steelworkers of Am.* v. *Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960). "When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." *Id.*; *see also 187 Concourse Assocs.* v. *Fishman*, 399 F.3d 524, 527 (2d Cir. 2005) (concluding that a court may vacate an award when "the arbitrator exceeds his powers" by acting beyond the scope of authority under the agreement or submission).

## 2. Standard of Review for Motions for Summary Judgment

District courts treat an application to confirm or vacate an arbitral award as akin to a motion for summary judgment. *City of New York* v. *Mickalis Pawn Shop, LLC*, 645 F.3d 114, 136 (2d Cir. 2011) (citing *D.H. Blair & Co.*, 462 F.3d at 109). A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To discharge this burden, a summary-judgment movant "bears the initial responsibility of … demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986). "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion." *Figueroa* v. *Mazza*, 825 F.3d 89, 98 (2d Cir. 2016) (quoting *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If a movant makes this showing, the non-movant "must 'set forth specific facts demonstrating that there is a genuine issue for trial,' and cannot 'merely rest on the allegations or denials' contained in the pleadings." *Trs. for the Mason Tenders Dist. Council Welfare Fund, Pension Fund, Annuity Fund, and Training Program Fund* v. *YES Restoration*, No. 14 Civ. 8536 (KPF), 2015 WL 3822764, at *3 (S.D.N.Y. June 19, 2015) (quoting *Wright* v. *Goord*, 554 F.3d 255, 266 (2d Cir. 2009)).

"A court reviewing a motion for summary judgment must 'construe the facts in the light most favorable to the non-moving party and must resolve all

9

ambiguities and draw all reasonable inferences against the movant.'" *Beyer* v. *County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (quoting *Dallas Aerospace, Inc.* v. *CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003)).

**B.     Analysis**

    **1.     The Arbitrator's Award Was Well-Supported by the Record**

Here, the grounds for the Award are clear.  Petitioners submitted ample evidence in support of their claim against Respondent, including testimony from the Funds' delinquency manager, shop steward reports for the periods at issue, and the Funds' deficiency reports detailing the unpaid amounts.  (*See* Pet. 56.1 ¶ 18; Award 2).  Accordingly, the Arbitrator's findings surpass the degree of reasoning that courts require to confirm an arbitration award.  *See D.H. Blair & Co.*, 462 F.3d at 110; *cf. Tube City IMS, LLC* v. *Anza Capital Partners*, LLC, 25 F. Supp. 3d 486, 491 (S.D.N.Y. 2014) (confirming arbitration award for return of overpaid invoices).

Further, the applicable collective bargaining agreement — the PLA — permits the Union to elect to pursue arbitration in matters involving employers' alleged failure to make requisite payments to the Funds.  (*See* Trust Agreements, § 9.8).  After noticing Respondent of the arbitration, Petitioners properly submitted the matter to arbitration.  (*See* Award 1-2).  The Court identifies no grounds for setting aside the Award.  *See Major League Baseball Players Ass'n*, 532 U.S. at 509; *cf. D.H. Blair & Co.*, 462 F.3d at 110 ("[T]he court 'must grant' the award 'unless the award is vacated, modified, or corrected.'" (quoting 9 U.S.C. § 9)); *Glob. Gold Min. LLC* v. *Caldera Res., Inc.*,

941 F. Supp. 2d 374, 380 (S.D.N.Y. 2013) ("Neither party challenges that arbitration was the appropriate forum for resolving this dispute.").

    **2.    Petitioners Are Entitled to Confirmation of the Total Amount of the Arbitrator's Award**

Based on this evidence, the Arbitrator issued the Award ordering Respondent to pay the Funds:

- For the period April 1, 2015, through June 1, 2015: (i) delinquent contributions for fringes of $6,974.52; (ii) dues and political action committee contributions of $1,134.36; (iii) current interest of $1,789.12; and (iv) an ERISA penalty of double the interest owed of $3,578.24;

- For the period July 1, 2018, through September 30, 2018: (v) delinquent contributions for fringes of $16,636.72; (vi) dues and political action committee contributions of $2,533.28; (vii) current interest of $1,017.53; (viii) and an ERISA penalty of double the interest owed of $2,035.06;

- (ix) attorneys' fees of $500; and (x) arbitrator fees of $1,050.

(See Award 2-3). The Arbitrator provided more than a "colorable justification" for the total award of $37,248.83. *D.H. Blair & Co.*, 462 F.3d at 110 (quoting *Landy Michaels Realty Corp.* v. *Local 32B-32J, Serv. Emps. Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992)); *see also N.Y.C. Dist. Council of Carpenters* v. *WJL*

*Equities Corp.*, No. 15 Civ. 4560 (KPF), 2015 WL 7571835, at *4 (S.D.N.Y. Nov. 24, 2015) (confirming arbitration award where "findings [were] in line with the written agreement, and [party challenging confirmation] provided no evidence that would draw them into question").

## CONCLUSION

For the reasons explained above, the Petition and the correlative summary judgment motion are GRANTED in Petitioners' favor.  Petitioners are ORDERED to submit a proposed final judgment on or before **April 30, 2021**.

SO ORDERED.

Dated:   April 16, 2021
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge